**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OKECHUKWU MUMMEE AMADI, : | |
| : | Civil Action |
| Petitioner, : | 06-4139 (AET) |
| : | |
| v. : | **O P I N I O N** |
| : | |
| UNITED STATES OF AMERICA, : | |
| : | |
| Respondent. : | |

**APPEARANCES:**

> OKECHUKWU MUMMEE AMADI, Petitioner pro se
> #06003-052
> Federal Detention Center
> P.O. Box 5010
> Oakdale, LA 71463

**ANNE E. THOMPSON, United States District Judge**

On August 31, 2006, Petitioner OKECHUKWU MUMMEE AMADI (hereinafter "Petitioner"), currently confined at the Federal Detention Center, Oakdale, Louisiana, filed an application seeking a Writ of Error Coram Nobis (hereinafter "Petition"). See Pet. at 1. After carefully examining Petitioner's Petition, this Court dismisses the Petition without prejudice for the reasons stated below.

Dockets.Justia.com

**BACKGROUND**

It appears that Petitioner asserts as follows:[1]

A decade ago, Petitioner, a native of Nigeria, id. at 3, was convicted of "conspiracy to import more than one kilogram of heroin[] into the United States." See Pet. at 2 and Ex. A. "Following [his] conviction, [Petitioner] expressed an interest in cooperating with [the government]." Id., Ex. A. After Petitioner "agreed to disclose truthfully all information regarding his activities," the government "agreed to inform [this Court] of the agreement and . . . , if [Petitioner] provided 'substantial assistance [to the government],'" to move this Court for reduction of Petitioner's sentence. Id. Consequently, after Petitioner and the government entered such agreement (hereinafter "Agreement"), and both Petitioner and the government performed their respective parts of the bargain, Petitioner's sentence was *reduced* to 84 months.[2] See Pet. at 2.

However, according to Petitioner, during the period of Agreement negotiations, Petitioner's counsel (a) did not notify Petitioner that Petitioner's sentence of 84 months could eventually

---

[1] Petitioner's submission, totaling forty one pages, consists of patchy accounts relating the events that Petitioner deems pertinent, see generally, Pet., thus complicating understanding of Petitioner's claims.

[2] Petitioner was originally facing 151 to 188 months of imprisonment. See Pet., Ex. A.

Page -2-

serve as basis for Petitioner's removal to Nigeria, and (b) "failed to request that Petitioner be relieved from deportation." Id. at 7. Although Petitioner's Petition is silent as to when a removal order against Petitioner was entered, it appears that, after Petitioner completed serving his term of imprisonment imposed by this Court (a) Petitioner was found to be subject to removal to Nigeria; (b) this finding was affirmed by the Board of Immigration Appeals (hereinafter "BIA"), and (c) Petitioner is about to be removed to Nigeria. See Pet., Ex. B at 3 (stating that "[Petitioner has] finished [his] prison sentence [but] all relief [from removal] was denied by the I[mmigration ]J[udge] [and] BIA").

Therefore, Petitioner's instant application requests this Court "to vacate or set[]aside [Petitioner's conviction by Petitioner's jury and re[-]sentence him for [the crime of] attempted possession of controlled substance and 360 days" term of imprisonment, thus, preventing Petitioner's removal to Nigeria. Pet. at 8. Id. at 3 and Ex. B at 1-2. Petitioner asserts that he is entitled to such post-factum "re-conviction" and reduction of sentence since the alleged failure of Petitioner's counsel to notify Petitioner that Petitioner's sentence of 84 months could serve as a basis for Petitioner's removal to Nigeria amounted to ineffective assistance of counsel in violation of Petitioner's Sixth Amendment rights. Id. at 4-7.

## DISCUSSION

### A. Standard of Review of an Application for a Writ of Corum Nobis

The standard of review applicable to petitions such as the one at bar was explained with specificity by the United States Court of Appeals for the Third Circuit. The Court stated that

> "[t]he writ of error coram nobis is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a)." United States v. Stoneman, 870 F.2d 102, 105 (3d Cir. 1989) (citing United States v. Morgan, 346 U.S. 502 (1954)). . . . Today, "[i]t is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer 'in custody' for purposes of 28 U.S.C. § 2255." Stoneman, 870 F.2d at 105-06. "[The Third Circuit] ha[s] concluded that to qualify for relief under coram nobis after a sentence has been served, the petitioner must show exceptional circumstances and continuing collateral disadvantages." Obado v. New Jersey, 328 F.3d 716, 718 (3d Cir. 2003) (citation omitted). The writ of error coram nobis has been repeatedly referred to as an "extraordinary remedy," "a remedy infrequently used," and "a remedy reserved for exceptional circumstances." See, e.g., Morgan, 346 U.S. at 511; United States v. Baptiste, 223 F.3d 188, 189 (3d Cir. 2000).

In explicating the contours of coram nobis, [the Third Circuit] have stated:

> Coram nobis is an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope. [See] United States v. Cariola, 323 F.2d 180, 184 (3d Cir. 1963). "The interest in finality of judgments dictates that the standard for a successful collateral attack on a conviction be more stringent than the standard applicable on a direct appeal." United States v. Gross, 614 F.2d 365, 368 (3d Cir. 1980). It is even more stringent than that on a petitioner seeking habeas corpus relief under § 2255. See United States v. Osser, 864 F.2d 1056, 1060-61 (3d Cir. 1988); United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968) (unlike habeas, where

> part of sentence remained unserved, no opportunity or incentive in coram nobis setting to retry defendant using newly discovered evidence where sentence already served).
>
> Stoneman, 870 F.2d at 106.  Thus, [the] courts have set out three requirements for a writ of error coram nobis: (1) the petitioner must no longer be "in custody," see Obado, 328 F.3d at 718; (2) the petitioner must be attacking a conviction with "continuing penalties" or "collateral consequences" to the petitioner, [see] Osser, 864 F.2d at 1059; and (3) (3) the error the petitioner seeks to correct is a "fundamental error" for which "there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier[.]" [S]ee Stoneman, 870 F.2d at 106 (citation omitted).

Evola v. AG of the United States (hereinafter "Evola"), 2006 U.S. App. LEXIS 18863, at *4-8 (3d Cir. N.J. July 26, 2006).

Under this standard, Petitioner's application should be dismissed.

### B.  **Petitioner's Application Has no Merit**

Petitioner asserts that ineffective assistance of his counsel constituted a fundamental error warranting coram nobis relief because Petitioner's counsel's failed to inform Petitioner of Petitioner's deportability ensuing from Petitioner's sentence of 84 months (obtained as a result of the Agreement).  Petitioner errs.

In fact, the Third Circuit in Evola examined similar contentions and found them without merit.  The Evola Court pointed out that,

> [i]n order for a [petitioner] to gain relief based on a constitutional claim that his counsel was ineffective, the [petitioner] must satisfy the two-pronged test

>  announced in Strickland. The [petitioner] must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Both Strickland prongs must be met in order to merit relief . . . . With regard to the second prong, a reasonable probability is one that is sufficient to undermine confidence in the outcome.

Evola, 2006 U.S. App. LEXIS 18863, at *8-9 (citing Strickland v. Washington, 466 U.S. 668 (1984)).

So observing, the Third Circuit explained that, within the context of counsel's failure to inform his client about possible deportation consequences, petitioner, in order to satisfy the second prong of Strickland, must show "prejudice" in the form of a reasonable probability that the petitioner's deporatability status would have been more favorable had it not been for the failure to so inform. Id. at 9-13. Conversely, if the petitioner would be subject to removal regardless of whatever actions the petitions could have taken had the petitioner been duly informed, the petitioner's claim fails to meet the Strickland tests. Id. at 13-16.

Applying the guidance of Evola Court to the case at bar, this Court finds Petitioner's contentions without merit.

Petitioner concedes that Petitioner was duly convicted by the jury, and that conviction was rendered on the basis of the charges constituting a deportable offense. See Pet. at 2, Ex. B. Petitioner also concedes that the sentence Petitioner was facing

originally, that is, prior to entering the Agreement, was *substantially longer* than that imposed by this Court after Petitioner entered the Agreement and the government performed its part of the bargain by making its motion for reduction of Petitioner's sentence. See Pet. at 3 and Ex. B.

Therefore, had Petitioner's counsel informed Petitioner that the reduced 84-month sentence would expose Petitioner to the possibility of deportation, and had Petitioner, displeased with such possibility, refused to enter the Agreement, Petitioner would be sentenced to a substantially longer term of imprisonment that would render Petitioner *just as deportable* as he became as a result of the 84-month sentence obtained through the Agreement. Moreover, Petitioner's *conviction* of the charges constituting a deportable offense was not--and could not have been--affected by Petitioner's Agreement.

Consequently, the alleged failure of Petitioner's counsel to inform Petitioner of Petitioner's potential deportability as a result of entering the Agreement could not have had any negative effect on Petitioner's current status as an alien subject to removal.[3]

---

[3] Moreover, Petitioner's assertion that Petitioner's counsel failed to secure a guarantee that Petitioner would not be removed because "the [c]ounsel was more interested in [the Agreement than in] his client's interest," presents pure conjecture on the part of Petitioner since Petitioner's voluminous application does not indicate that the government made or even considered making an

Therefore, Petitioner's claims fail to meet the Strickland test, see Evola, 2006 U.S. App. LEXIS 18863, at *13-16, and thus should be dismissed for failure to show a "fundamental error" pursuant to Stoneman, 870 F.2d at 106.

**CONCLUSION**

For the foregoing reasons, Petitioner's application for a writ of coram nobis is denied.

An appropriate order accompanies this Opinion.

s/Anne E. Thompson
**ANNE E. THOMPSON**
**United States District Judge**

Dated: September 8, 2006

---

offer not to deport Petitioner. See Pet., Ex. A (a letter in which Petitioner "state[d] that there have been no additional promises or representations made to [him] by any officials or employees of the United States Government or by [his] attorney in connection with this matter").